HINSDALE SANITARY DISTRICT, Petitioner, *v.* THE POLLUTION CONTROL BOARD *et al.*, Respondents.

(No. 74-70; ▮▮▮▮▮▮)

Second District (2nd Division)—August 8, 1975.

Scofield & Main, of Hinsdale, and William H. Wake, of Aurora, for petitioner.

William J. Scott, Attorney General, of Chicago, John J. Bowman, State's Attorney, of Wheaton, and Daniel H. Pappas, of Niles (Marvin I. Medintz, Assistant Attorney General, and Joseph Bonk, Assistant State's Attorney, of counsel), for respondents.

Mr. JUSTICE THOMAS J. MORAN delivered the opinion of the court:

The Hinsdale Sanitary District (District) appeals from the Illinois Pollution Control Board's (Board) order which dismissed the District's complaint without a hearing. The District had sought revocation of a

permit, issued by the Environmental Protection Agency to the Riverwoods Development Corporation, which allowed the corporation to construct and operate a privately owned package sewage treatment facility for a proposed development near Hinsdale.

For a proper understanding, it is necessary that we set forth background factors giving rise to the issues presented.

The Board, in order to alleviate water pollution in the County of Du Page, adopted Regulation 70—17. The regulation's preamble (section 1101) pointed out that there was, within the densely populated and developing county, a proliferation of small sewage treatment plants which constituted an impediment to the correction of the present water pollution and a continuing threat of additional pollution in the future; that resolution of the problem necessitated the development of large disposal plants which were more efficient than the small package plants; and that this could best be accomplished by dividing the county, geographically, into nine regions with regional plants strategically located within each of the regions. This goal required the collection of certain preliminary data and the regulation was to provide the vehicle for doing so.

The regulation authorized the institution of informal hearings within each of the nine regions, the same to be conducted by hearing officers who, in turn, were to report back to the Board with their recommendations as to how the goals could best be accomplished. The regulation then provided:

> "1108 Issuance of Regional Program. After receipt of the recommendations from the Hearing Officer, the Board shall issue a Regional Program for each of the nine regions, which Program shall provide specific findings as to each region as to how regionalization will be accomplished. This Regional Program, inter alia, shall include the following:
>
> (a) Designate those plants to remain in service, to be constructed, or expanded as regional plants and those plants to be designated as interim facilities, with specific "phase-in, phase-out" dates where applicable;
>
> (b) Designate in each of the nine regions the governmental agency(s) responsible for sewage treatment;
>
> (c) Delineate areas of future growth within DuPage County, making provision for regional sewage treatment plant expansion when necessary;
>
> (d) Provide for a sufficient transport system under the control of a responsible governmental agency in order to carry sewage to the regional treatment plant;
>
> (e) Evaluate the ability of each regional sewage treatment

plant to handle its present and projected capacity consonant with predicted growth patterns within DuPage County;

(f) Provide that presently unserviced areas are guaranteed service on a reasonable cost basis and without the imposition of unreasonable conditions before hookup is allowed.

\* \* \*

1113 Future Construction. No permit shall be granted for the construction or operation of any additional sewage treatment plant in DuPage County, except for interim facilities in the event of a demonstrated emergency, that does not conform with the' principles of the Regional Program described in Section 1108 of this Chapter, or that is of capacity so small as to create an insignificant risk of inadequate treatment, according to the policies expressed in Rule 1101 of this Chapter."

On appeal, the District contends that issuance of the permit to the corporation violated the principles and goals set forth in paragraph 1101, and also violated the Board's regulation set forth in paragraph 1113.

■■ Clearly, the totality of Regulation 70—17 is a blueprint for procedures, organization and coordination necessary to achieve the regionalization of sewage treatment. Paragraph 1113 does not establish a general moratorium which would prohibit the construction of all sewage treatment facilities subsequent to the adoption of Regulation 70—17. Indeed, paragraph 1113 (one of many steps toward achieving the broad goals of paragraph 1101) cannot, by its own terms, become effective until the investigatory work and recommendations required under paragraph 1108 have been completed. In the instant case, the regional program was not in effect at the time the permit issued, nor was it in effect at the time the complaint herein was filed with or denied by the Board. It cannot therefore be said that the issuance of the permit was contrary to the Board's rules and regulations then in force.

The District next contends that it, as well as the Pollution Control Board, has the lawful power to prevent pollution of the waters. The Environmental Protection Act (Ill. Rev. Stat. 1973 ch. 111½, § 1011(c)) states:

"(c) The provisions of this Act authorizing implementation of and regulations pursuant to an NPDES program shall not be construed to limit, affect, impair, or diminish the authority, duties and responsibilities of the Board, Agency, Institute or any other governmental agency or officer, or of any unit of local government, to regulate and control pollution of any kind, to restore, to protect or to enhance the quality of the environment, or to achieve all

other purposes, or to enforce provisions, set forth in this Act or other State law or regulation."

The District's power to prevent pollution derives from section 18 of the Sanitary District Act of 1917, which provides in part:

"(a) The board of trustees of any such sanitary district may prevent the pollution of any waters from which a water supply may be obtained by any city, town or village within the district, and may appoint and support a sufficient police force, the members of which may have and exercise police powers over the territory within such drainage district, and over the territory included within a radius of fifteen miles from the intake of any such water·supply in any such waters, for the purpose of preventing the pollution of the waters * * *." Ill. Rev. Stat. 1973, ch. 42, § 317.

■■ In its complaint the District alleges its statutory duty and authority to prevent pollution within its boundaries, that it has the police power to prevent pollution within 15 miles of any water intake belonging to the District providing a public water supply, and that the proposed outfall of the package sewage treatment facility would flow within an area over which the District has the police power to prevent the pollution of water. It must be noted that no allegation was raised which would indicate that the proposed outfall would in fact be polluted. There is, therefore, no situation which would warrant the invocation of the District's authority under the cited statute.

For these reasons, the order of the Board is affirmed.

Order affirmed.

RECHENMACHER, P. J., and DIXON, J., concur.